IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEPHEN BROOM,<br><br>             Plaintiff,<br><br>   vs.<br><br>MYDATT SERVICES, Inc., dba<br>BLOCK BY BLOCK, et al.<br><br>             Defendants. | Civ. No. 18-00358 JMS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION, ECF NO. 14, AND DISMISSING ACTION |

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION, ECF NO. 14, AND DISMISSING ACTION**

**I. INTRODUCTION**

Defendants Mydatt Services, Inc., d.b.a. Block by Block; SMS Holdings Co.; and Block by Block (collectively "Mydatt" or "Defendants")[1] move pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA") to compel arbitration of this action. They base their motion on an arbitration agreement that Plaintiff Stephen Broom ("Plaintiff" or "Broom") entered into with Mydatt on September 28, 2015. As explained to follow, the Motion to Compel Arbitration is

---

[1] Mydatt Services, Inc., d.b.a. Block by Block is wholly owned by SMS Holdings Corporation. *See* ECF No. 4. "Block by Block" is a registered trade name of Mydatt Services, Inc. and therefore "Block by Block" and Mydatt Services, Inc. are the same entity. *Id.*

1

GRANTED. Further, because the entire dispute is subject to arbitration, the court DISMISSES the action (rather than staying it under 9 U.S.C. § 3).[2]

## II. DISCUSSION

### A. The Federal Arbitration Act

An arbitration agreement within the scope of the FAA "shall be valid, irrevocable and enforceable," except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And any party "aggrieved by the alleged . . . refusal of another to arbitrate" may petition a district court for an order compelling arbitration in the matter provided for in the agreement. 9 U.S.C. § 4. "The FAA 'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "[T]he FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

---

[2] Under Local Rule 7.2(d), the matter is suitable for decision without an oral hearing.

2

To determine whether a valid agreement to arbitrate exists, a court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[A]greements to arbitrate [may] be invalidated by generally applicable [state-law] contract defenses" to enforceability such as "fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2001) (citations and quotation marks omitted); *see Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) ("This requires [a court] to consider what is unconscionable and unenforceable under . . . state law."). "The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists," and if met, the burden then "shifts to the opposing party to present evidence on its defenses to the arbitration agreement." *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 446, 312 P.3d 869, 878 (2013) (citations and quotation marks omitted).

Here, it is undisputed that Plaintiff entered into an arbitration agreement with Mydatt, obligating the parties to arbitrate "disputes or controversies arising out of or relating to . . . your employment with the Company, and/or the termination of your employment." Defs.' Ex. 1, ECF No. 14-4; Defs.' Ex. 8, ECF No. 20-5. It is also undisputed that this action arises out of or relates to

Plaintiff's termination of employment.[3] The only question is whether the agreement is unconscionable and unenforceable.

Specifically, when Plaintiff applied online for employment with Mydatt in September of 2015, he selected the option "I have read and accept the terms of the agreement" at the bottom of an "Arbitration Agreement," which is required for all of Mydatt's employees. *See* Defs.' Ex. A at 6, ECF No. 18-1 at 6; Scott McClish Decl. (Jan. 3, 2019) ¶ 10, ECF No. 14-2 at 5 ¶ 10. Further, on November 17, 2015, Plaintiff acknowledged receipt of (and an obligation to read and comply with) a Mydatt employee handbook, which includes the following paragraph:

> Block & Block does enter into arbitration agreements with employees . . . and those agreements are intended to be binding contracts between Block & Block and its employees. Any policies or policy statements related to the resolution of disputes by arbitration should be interpreted in accordance with the parties' intent that the arbitration agreement is a binding and enforceable contract pursuant to the Federal Arbitration Act and to applicable state and local laws.

Defs.' Ex. 3, ECF No. 14-6; Defs.' Ex. 4 at 3, ECF No. 14-7 at 3.

---

[3] Plaintiff's suit, originally filed in the First Circuit Court of the State of Hawaii, alleges that Plaintiff was terminated from his position with Mydatt in retaliation for reporting violations of law by his supervisors. Compl. ¶ 6, ECF No. 1-1 at 3 ¶ 6. It alleges a single count of unlawful retaliation under Haw. Rev. Stat. § 378-62. *Id.* ¶ 15, ECF No. 1-1 at 4 ¶ 15. Although only alleging a state law violation, the action was timely removed to federal court based on diversity of citizenship. *See* ECF No. 1.

Plaintiff contends, however, that the arbitration agreement is unconscionable and unenforceable. He argues that it is written in a "very small print," with a print size "smaller than the print size in other documents" he completed in his application process. Pl.'s Opp'n at 6, ECF No. 19 at 6. He also originally argued that the agreement "requires cost and fee splitting between the parties," *id.* at 7, and that sharing in the costs of arbitration would create a financial hardship for him because his only income consists of worker's compensation benefits of approximately $1,060 every two weeks, *id.* at 4.

**B.    The Arbitration Agreement is Enforceable and is not Unconscionable**

Under Hawaii law, "[u]nconscionability encompasses two principles: one-sidedness (substantive unconscionability) and unfair surprise (procedural unconscionability)." *Gabriel v. Island Pac. Acad., Inc.*, 140 Haw. 325, 337, 400 P.3d 526, 538 (2017) (citing *Balogh v. Balogh*, 134 Haw. 29, 41, 332 P.3d 631, 643 (2014)). "'Generally, a determination of unconscionability requires a showing that the contract was *both* procedurally *and* substantively unconscionable when made,' but an impermissibly one-sided contract can be unconscionable and unenforceable without a showing of unfair surprise." *Id.* (quoting *Balogh*, 134 Haw. at 41, 332 P.3d at 643) (emphases added).

"Procedural unconscionability 'requires an examination of the contract formation process and the alleged lack of meaningful choice.'" *Narayan v. Ritz-Carlton Dev. Co.*, 140 Haw. 343, 351, 400 P.3d 544, 552 (2017) (quoting *Gilman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (1988)). When assessing procedural unconscionability, courts consider (among other factors) "whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power between the parties." *Id.*, 400 P.3d at 552 (quotation marks and citation omitted). "Although adhesion contracts are not unconscionable *per se*, they are defined by a lack of meaningful choice and, thus, often satisfy the procedural element of unconscionability." *Id.*, 400 P.3d at 552.

"Substantive unconscionability, in contrast, focuses on the content of the agreement and whether the terms are one-sided, oppressive, or 'unjustly disproportionate.'" *Id.*, 400 P.3d at 552 (quoting *Balogh*, 134 Haw. at 41, 332 P.3d at 643). *See, e.g.*, *Gabriel*, 140 Haw. at 337, 400 P.3d at 538 (holding that a cost-splitting provision in an arbitration agreement is substantively unconscionable if "it would be prohibitively expensive for [plaintiff] to pursue her claims in the arbitral forum").

Plaintiff's original opposition asserted — without providing evidence of the applicable provision — that the arbitration agreement is substantively unconscionable because it requires fee-splitting. In this regard, the agreement provides that "[i]f you and the Company cannot agree, the American Arbitration Association ('AAA') will administer the arbitration pursuant to its applicable Rules . . . available on the AAA's website (www.adr.org)." Defs.' Ex. 1, ECF No. 14-4. It continues: "The AAA Rules will govern the allocation of costs between the parties and the course of proceedings unless otherwise agreed." *Id.*

In a supplemental filing, however, Defendants provided the applicable AAA rules regarding arbitration costs and an arbitrator's fees. *See* Defs.' Ex. 10, ECF No. 23-2. Those rules provide, in pertinent part, that (1) for an arbitration filed by the company (e.g., Mydatt), an administrative fee of $2,200 is payable in full *by the company*, *id.* at 1 (emphasis added),[4] and (2) in any event, "*[t]he employer or company* shall pay the arbitrator's compensation unless the employee or individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." *Id.* at 2 (emphasis added).

---

[4] If an arbitration is filed by an individual, that person pays a "filing fee capped at $300, unless the clause provides the individual pays less," and the company pays a "filing fee of $1,900 and [the] balance of [the] individual's filing fee when the clause provides the individual to pay less." Defs.' Ex. 10, ECF No. 23-2 at 1.

Plaintiff forthrightly agrees that those AAA rules regarding allocation of costs are applicable. *See* Pl.'s Supp. Mem. at 4, ECF No. 28 at 4. And apparently recognizing that under those rules Plaintiff would pay very little if anything for an arbitration initiated by the employer, Plaintiff also candidly agrees that the rules "are not substantively unconscionable." *Id.* at 5, ECF No. 28 at 5. Plaintiff asserts, however, that "[t]he only remaining issue is whether the fine print of the Arbitration Agreement makes in procedurally unconscionable." *Id.*

But, in this instance, it does not matter whether the arbitration agreement is procedurally unconscionable. Before the agreement can be unenforceable, it must be *both* procedurally *and* substantively unconscionable. *See, e.g.*, *Gabriel*, 140 Haw. at 337, 400 P.3d at 538; *Narayan*, 140 Haw. at 350, 400 P.3d at 551.[5] In other words, even assuming the agreement is procedurally unconscionable,[6] it is still enforceable because it is not impermissibly one-sided —

---

[5] Although "an impermissibly one-sided contract [i.e., a substantively unconscionable] contract can be unconscionable and unenforceable without a showing of unfair surprise [i.e., procedurally unconscionability]," *Gabriel*, 140 Haw. at 337, 400 P.3d at 538, the opposite is not true. Procedural unconscionability is not enough.

[6] Mydatt's arbitration agreement does appear to have some element of procedural unconscionability. True, Plaintiff acknowledged agreeing to its terms. *See* McClish Supp. Decl. (Feb. 22, 2019) ¶ 4, ECF No. 20-1 at 3 ¶ 4. But it is also clear that Plaintiff had absolutely no choice but to accept the agreement if he wanted to apply and accept employment with Mydatt. *See id.* ¶ 6, ECF No. 20-1 at 4 ¶ 4 ("If the candidate clicks the button stating 'I have read and do not accept the terms of this agreement,' the candidate cannot proceed any further with the online application process."). Nevertheless, because the agreement is not substantively unconscionable,
(continued . . .)

it is not, as Plaintiff ultimately agrees, substantively unconscionable. *See, e.g.*, *S. Glazer's Wine & Spirits, LLC v. Denyer*, 2017 WL 6417810, at *8 (D. Haw. Dec. 15, 2017) (upholding arbitration agreement, reasoning that "even if this were sufficient to establish procedural unconscionability, the failure . . . would only render the agreement unenforceable if the arbitration policy was substantively unconscionable") (citation and internal editorial marks omitted); *Smith v. Bank of Hawaii*, 2018 WL 1662107, at *7 (D. Haw. Apr. 5, 2018) (upholding contractual limitation provision that "at least to some degree, meets the procedural element of unconscionability" but where "the time limit imposed is not substantively unconscionable — that is, it is not unreasonable under the circumstances").

Thus, the court upholds the arbitration agreement and compels arbitration of this action, as public policy encourages. *See, e.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("[T]he Federal Arbitration Act . . . embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *Gabriel*, 140 Haw. at 335, 400 P.3d at 536 ("At the federal and state level, there exists a strong policy in favor of arbitration, such that any doubt concerning whether a dispute is covered by an

---

(. . . continued)
the court need not determine whether this "take it or leave it" aspect of its formation renders the agreement procedurally unconscionable.

arbitration agreement should be resolved in favor of arbitrability.") (citations omitted).

C.  **The Court Dismisses the Action**

Finally, Defendants ask the court to either dismiss the action or stay the proceedings pending arbitration. In this regard, 9 U.S.C. § 3 provides that if a suit is referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Such a stay, however, is not mandatory if the entire action (as opposed to only some of the claims) is subject to arbitration. *See, e.g.*, *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014) ("[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration."); *Thinket Ink Info. Res. Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (indicating that a stay is not mandatory and the court may alternatively dismiss those claims that are subject to arbitration); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (citing cases). Applying these principles, because the Complaint asserts only a single

10

count — a claim that is subject to the arbitration agreement — there is no requirement to stay this action. Accordingly, the court DISMISSES the action in lieu of staying under 9 U.S.C. § 3.

### III. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion to Compel Arbitration and DISMISSES the action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 8, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Broom v. Mydatt Servs., Inc. et al.*, Civ. No. 18-00358 JMS-RT, Order Granting Defendants'
Motion to Compel Arbitration, ECF No. 14, and Dismissing Action